## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DIRK PAULIN,** | **CIVIL ACTION** |
| **Plaintiff** | |
| | |
| **VERSUS** | **NO. 22-4585** |
| | |
| **KRISTI NOEM,** | **SECTION: "E" (1)** |
| **SECRETARY OF STATE OF** | |
| **THE DEPARTMENT OF HOMELAND** | |
| **SECURITY,** | |
| **Defendant** | |

### ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant Department of Homeland Security ("Defendant").[1] Plaintiff Dirk Paulin ("Plaintiff") filed an opposition to the motion.[2] Defendant filed a reply.[3] Defendant's motion for summary judgment is **GRANTED**.

### FACTUAL BACKGROUND

This case arises out of an employment relationship between Plaintiff and Department of Homeland Security, Federal Emergency Management Agency ("FEMA" or "Defendant").[4] In 2021, Plaintiff applied, but was not selected, for ten positions at FEMA.[5] Plaintiff alleges Defendant did not promote him in retaliation for four instances of Equal Employment Opportunity ("EEO") activity.[6] Defendant responds it did not promote Plaintiff due to his lack of qualifications for the positions.[7] Plaintiff initiated this

---

[1] R. Doc. 87.
[2] R. Doc. 94.
[3] R. Doc. 98.
[4] R. Doc. 1 at p. 3. ¶ 9.
[5] R. Doc. 94 at pp. 6-7.
[6] *Id.*
[7] R. Doc. 87.

lawsuit on November 18, 2022, bringing claims of retaliation and hostile work environment under Title VII of the Civil Rights Act of 1964.[8]

The following facts are undisputed. Plaintiff was hired by FEMA in 2006.[9] From 2009 to 2017, while employed with FEMA, Plaintiff filed four EEO complaints. On November 30, 2009 Plaintiff filed an EEO complaint in case HS-10-FEMA-008.[10] On May 5, 2012, Plaintiff filed an EEO complaint in case HS-FEMA-21886-2012.[11] On February 23, 2013, Plaintiff filed a complaint in case HS- FEMA-00781-2013.[12] On November 29, 2017, Plaintiff filed an EEO complaint in case HS-FEMA-00308-2018.[13]

From 2019 to 2021, Plaintiff applied for:

- two positions in the FEMA Chicago office:

    1. Supervisory Emergency Management Specialist (Recovery);[14]

    2. Emergency Management Specialist (Recovery);[15]

- two positions in the Denton, Texas office:

    3. Supervisory Emergency Management Specialist (Recovery);[16]

    4. Emergency Management Specialist (Recovery);[17]

- two positions in the New York City office:

    5. Supervisory Emergency Management Specialist (Recovery);[18]

    6. Emergency Management Specialist (Recovery);[19]

- two positions in the Atlanta office:

---

[8] R. Doc. 1.
[9] R. Doc. 87-2 ¶ 1; R. Doc. 109 ¶ 1.
[10] R. Doc. 67-2 at p. 3.
[11] *Id.*
[12] *Id*
[13] *Id.*
[14] R. Doc. 87-2 ¶ 11; R. Doc. 109 ¶ 11.
[15] R. Doc. 87-2 ¶ 12; R. Doc. 109 ¶ 12.
[16] R. Doc. 87-2 ¶ 11; R. Doc. 109 ¶ 11.
[17] R. Doc. 87-2 ¶ 12; R. Doc. 109 ¶ 12.
[18] R. Doc. 87-2 ¶ 11; R. Doc. 109 ¶ 11.
[19] R. Doc. 87-2 ¶ 12; R. Doc. 109 ¶ 12.

7.  Supervisory Emergency Management Specialist (Recovery);[20]

8.  Emergency Management Specialist (Recovery);[21]

- and two positions with unspecified locations:

9.  EMS (PA Group Supervisor) position in the Public Assistance Division (PAD), Field Support Branch, Cadre Management Support;[22]

10. VA-FEMA-19-CLM-2939333-CORE, EMS (RECOVERY).[23]

Plaintiff was interviewed for only one of these positions, Supervisory Emergency Management Specialist (Recovery) in Denton, Texas.[24] Plaintiff was not selected for any of the ten positions.

On July 9, 2021, Plaintiff filed an EEO complaint, claiming Defendant did not select him for any of these ten positions in retaliation for his four instances of prior EEO activity from 2009 to 2017.[25] Plaintiff further claims that Defendant created a hostile work environment through "denial of promotions and constant retaliation."[26]

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[27] "An issue is material if its resolution could affect the outcome of the action."[28] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing

---

[20] R. Doc. 87-2 ¶ 11; R. Doc. 109 ¶ 11.
[21] R. Doc. 87-2 ¶ 12; R. Doc. 109 ¶ 12.
[22] R. Doc. 87-2 ¶ 13; R. Doc. 109 ¶ 13.
[23] R. Doc. 87-2 ¶ 48.
[24] R. Doc. 87-2 ¶ 15; R. Doc. 109 ¶ 15.
[25] R. Doc. 1 at ¶ 21.
[26] *Id.* at ¶ 25.
[27] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[28] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

the evidence."[29] All reasonable inferences are drawn in favor of the nonmoving party.[30] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[31]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[32] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[33]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[34] When proceeding under the

---

[29] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

[30] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[31] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[32] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[33] *Celotex*, 477 U.S. at 322-24.

[34] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322-24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[35] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[36] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[37] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[38] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[39]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim.

---

[35] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).
[36] *Celotex*, 477 U.S. at 332-33.
[37] *Id.*
[38] *Id.* at 332-33 & n.3.
[39] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.

'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[40]

## LAW AND ANALYSIS

Defendant moves for summary judgment on both Plaintiff's retaliation claim under Title VII and his hostile work environment claim under Title VII. The Court will first analyze Plaintiff's claims of retaliation for each of the positions for which Plaintiff was not selected. Next, the Court will address Plaintiff's hostile work environment claim.

## I.    Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claim Under Title VII.

At the summary judgment stage, courts apply the *McDonnell Douglas* burden shifting framework when analyzing claims of retaliation based on circumstantial evidence.[41] A plaintiff may use either direct or circumstantial evidence to prove a case of retaliation under Title VII. If a plaintiff relies on circumstantial evidence, the *McDonnell Douglass* burden shifting framework applies.[42] "Direct evidence is evidence which, if believed, proves the fact [of retaliation] without inference or presumption."[43] If a plaintiff presents direct evidence, the *McDonnell Douglas* test does not apply.[44] More often, a plaintiff relies on circumstantial evidence, which requires the court to apply the *McDonnell Douglas* burden-shifting analysis.[45] As Plaintiff in this case relies on circumstantial evidence, the court will analyze these claims under *McDonnell Douglass*.

---

[40] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).
[41] *See Cardiel v. Apache Corp.*, 559 Fed.Appx. 284, 288 (5th Cir. 2014) (applying *McDonnell Douglas* analysis to determine motion for summary judgment).
[42] *U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711, 714 n. 3 (1983).
[43] *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (1993).
[44] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)
[45] *Cardiel*, 559 Fed.Appx. at 288 (5th Cir. 2014) (applying *McDonnell Douglas* analysis to determine motion for summary judgment).

Under the *McDonnell Douglas* test, the plaintiff must first demonstrate a prima facie case of retaliation.[46] "To establish a prima facie case of retaliation, a plaintiff must show that (1) [he] participated in an activity protected under the statute; (2) [his] employer took an adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse action."[47] To demonstrate a causal connection at the summary judgment stage, the Fifth Circuit has held that although the burden is not onerous, "the plaintiff must produce at least some evidence that the decisionmakers had knowledge of the protected activity."[48] "The proffered evidence must be sufficient to permit a reasonable factfinder to conclude that the decisionmaker had knowledge of the protected activity."[49]

If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to produce a legitimate, non-retaliatory reason for its employment decision. The employer must merely articulate a legitimate, non-retaliatory reason for its employment action.[50] "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."[51] Once the defendant offers non-retaliatory reasons for its adverse employment action, the burden shifts back to the plaintiff, who must produce evidence demonstrating that defendant's proffered non-retaliatory reasons amount to pretext.[52] At summary judgment, to demonstrate pretext on a Title VII retaliation claim, the plaintiff "must show a conflict in substantial evidence" on the

---

[46] *Lemaire v. Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007). (applying *McDonnell Douglas* test).
[47] *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).
[48] *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 & n.6 (5th Cir. 2003); *see also Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 320 (5th Cir. 2004).
[49] *Amie v. El Paso Indep. Sch. Dist.*, 253 Fed.App'x 447, 454-55 (5th Cir. 2007).
[50] *Id.*
[51] *McCoy v. Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).
[52] *Lemaire*, 480 F.3d at 388-89 (5th Cir. 2007).

question of whether Defendant would not have demoted Plaintiff "but for" the protected activity.[53]

### A. Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claim Under Title VII for the Texas, Atlanta, New York, and PA Group Supervisor Positions.

#### 1. Plaintiff has Failed to Make a Prima Facie Showing of Title VII Retaliation for Non-Selection for the Texas, Atlanta, New York, and PA Group Supervisor Positions.

Plaintiff argues Defendant retaliated against him by not selecting him for two positions in the Denton, Texas office:

- Supervisory Emergency Management Specialist (Recovery);[54]

- Emergency Management Specialist (Recovery).[55]

two positions in the New York City office:

- Supervisory Emergency Management Specialist (Recovery);[56]

- Emergency Management Specialist (Recovery);[57]

two positions in the Atlanta office:

- Supervisory Emergency Management Specialist (Recovery);[58]

- Emergency Management Specialist (Recovery);[59]

and one position with an unspecified location:

---

[53] *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.,* 730 F.3d 450, 454 (5th Cir. 2013)).
[54] R. Doc. 87-2 ¶ 11; R. Doc. 109 ¶ 11.
[55] R. Doc. 87-2 ¶ 12; R. Doc. 109 ¶ 12.
[56] R. Doc. 87-2 ¶ 11; R. Doc. 109 ¶ 11.
[57] R. Doc. 87-2 ¶ 12; R. Doc. 109 ¶ 12.
[58] R. Doc. 87-2 ¶ 11; R. Doc. 109 ¶ 11.
[59] R. Doc. 87-2 ¶ 12; R. Doc. 109 ¶ 12.

-  EMS (PA Group Supervisor) position in the Public Assistance Division
   (PAD), Field Support Branch, Cadre Management Support.[60]

Title VII prohibits an employer from taking adverse employment action against an
employee because he engages in protected activity.[61] "To establish a prima facie case of
retaliation, a plaintiff must show that (1) [he] participated in an activity protected under
the statute; (2) [his] employer took an adverse employment action against [him]; and (3)
a causal connection exists between the protected activity and the adverse action."[62]

Defendant concedes that Plaintiff participated in protected activity by filing EEO
complaints and that an adverse employment action occurred.[63] Defendant argues it is an
undisputed fact that Plaintiff has not satisfied element three of a prima facie case of
retaliation, as Plaintiff produces no evidence to demonstrate a causal connection between
the protected activity and the adverse action.[64] In demonstrating a causal connection at
the summary judgment stage, the Fifth Circuit has held that although the burden is not
onerous, "the plaintiff must produce at least some evidence that the decisionmakers had
knowledge of the protected activity."[65] "The proffered evidence must be sufficient to
permit a reasonable factfinder to conclude that the decisionmaker had knowledge of the
protected activity."[66] Defendant argues Plaintiff has not produced evidence sufficient to
permit a reasonable finder of fact to conclude that any of the individuals involved in hiring

---

[60] R. Doc. 87-2 ¶ 13; R. Doc. 109 ¶ 13.

[61] *Joseph v. Phillips 66*, No. 13-5254, 2014 WL 5429455 at *3 (E.D. La. Oct. 24, 2014).

[62] *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

[63] R. Doc. 87-1 at p. 12.

[64] *Id.*

[65] *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 & n.6 (5th Cir. 2003); *see also Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 320 (5th Cir. 2004).

[66] *Amie v. El Paso Indep. Sch. Dist.*, 253 Fed.App'x 447, 454-55 (5th Cir. 2007).

for the Texas, Atlanta, New York, and PA Group Supervisor positions had actual knowledge of his EEO activity.[67]

Defendant claims Traci Brasher was the selecting official for the positions in Texas.[68] Defendant also claims that Angella Costella, Kristin Buda, and William Melara conducted Plaintiff's interview for the Texas position, and that Donald Simko tallied Plaintiff's interview score.[69] Defendant provides evidence that none of these individuals had knowledge of Plaintiff's EEO activity.[70] Defendant cites to an affidavit from Brasher stating she was the selecting official for the Texas positions and she had no knowledge of Plaintiff's EEO activity.[71] Defendant also cites to affidavits from each of the interview panel members and Donald Simko wherein they each explain their role in the process and attest that they had no knowledge of Plaintiff's EEO activity.[72] In response, Plaintiff argues only that Brasher was not the selecting official for the Texas positions.[73] To support this proposition, Plaintiff cites the same affidavit from Brasher that Defendant relies on. However, Brasher states in that affidavit that she *was* the selecting official for the Texas positions.[74] Plaintiff has provided no summary judgment evidence to refute these affidavits.

---

[67] R. Doc. 87-1 at p. 15. Even if Plaintiff had demonstrated that hiring decisionmakers had knowledge of his protected activity, Plaintiff would still fail to show a causal connection as Plaintiff has not show a close enough temporal proximity between the protected activity and the adverse employment action for any of the positions at issue.

[68] *Id.* Though she served as selecting official for the Texas positions, Brasher was not a member of the panel that interviewed Plaintiff. R. Doc. 87-6 at ¶ 11.

[69] R. Doc. 87-11 at ¶¶ 3 and 4 (Affidavit of Angela Costella); R. Doc. 87-12 at ¶¶ 3 and 4 (Affidavit of Kristin Buda); R. Doc. 87-13 at ¶¶ 3 and 4 (Affidavit of William Melara); R. Doc. 87-14 at ¶ 22 (Affidavit of Donald Simko).

[70] R. Doc. 87-1 at p. 18.

[71] R. Doc. 87-6 at ¶¶ 3, 11, 26 (Affidavit of Traci Lea Brasher);

[72] R. Doc. 87-11 at ¶¶ 3 and 4 (Affidavit of Angela Costella); R. Doc. 87-12 at ¶¶ 3 and 4 (Affidavit of Kristin Buda); R. Doc. 87-13 at ¶¶ 3 and 4 (Affidavit of William Melara); R. Doc. 87-14 at ¶ 22 (Affidavit of Donald Simko).

[73] R. Doc. 109 ¶ 16.

[74] R. Doc. 87-6 at ¶ 11 (Affidavit of Traci Lea Brasher).

Defendant claims that Saidat Thomas was the hiring official for the Atlanta positions and relies on Thomas's affidavit in which Thomas states he was the hiring official for the Atlanta positions and he had no knowledge of Plaintiff's protected activity.[75] Plaintiff argues that Thomas was not the selecting official for the positions at issue. However, Defendant states Thomas was the hiring official.[76] Plaintiff has provided no summary judgment evidence refuting Thomas' affidavit.

Defendant claims that Claude Hyacinthe was the selecting official for the New York positions, citing to Hyacinthe's affidavit in which he states he was the selecting official and had no knowledge of Plaintiff's protected activity.[77] Plaintiff argues that Hyacinthe was not the selecting official for the positions at issue, but points to the same affidavit in which Hyacinthe specifically states that he was the selecting official for the positions.[78] Plaintiff has provided no summary judgment evidence refuting Hyacinthe's affidavit.

Plaintiff has not offered any evidence showing these named hiring/selecting officials and interview panel members had knowledge of his EEO activity. Alternatively, Plaintiff argues that other various unnamed FEMA employees had general knowledge of his EEO activity and that this knowledge had filtered throughout the agency.

Plaintiff argues that for the PA Group Supervisor position, Daniel Halle reviewed the resumes to determine who would be put on a list to be sent to the selecting officials.[79] Plaintiff states that he filed an EEO complaint against Halle, and as a result, Halle, an individual in the hiring process, knew of his protected activity.[80] In support, Plaintiff relies on his own affidavit in which he merely states that Halle was involved in the hiring

---

[75] R. Doc. 87-7 at ¶ 26 (Affidavit of Saidat Thomas).
[76] R. Doc 87-1 at p. 21.
[77] R. Doc. 87-8 at ¶ ¶ 12, 21 (Affidavit of Claude Hyacinthe)
[78] *Id.* at ¶ 12.
[79] R. Doc. 94 at p. 11.
[80] *Id.*

process.[81] In addition, Plaintiff relies on Hyacinthe's affidavit, in which Hyacinthe identifies Halle as one of five members on the interview panel for the PA Group Supervisor Position.[82] However, Plaintiff was not granted an interview for this position.[83] As a result, while Halle may have been aware of Plaintiff's EEO activity, Halle would not have interacted with Plaintiff or reviewed his application, as Halle only participated on the interview panel.[84] Furthermore, Plaintiff offers no evidence suggesting that interview panel members provided input to selecting officials on which candidates to select for interviews. Accordingly, Plaintiff offers no evidence showing Halle participated in the review of Plaintiff's candidacy. Plaintiff also claims that Danielle Hutchins, who reviewed Plaintiff's resume for the PA Group Supervisor position, acknowledged in an affidavit that she was aware of Plaintiff's EEO activity.[85] However, Hutchins's affidavit does not permit a reasonable factfinder to conclude she was aware of Plaintiff's EEO activity when she reviewed his application, as Hutchins stated that she became aware of Plaintiff's EEO activity on August 23, 2021, months after Plaintiff was notified he was not selected for this job.[86] Accordingly, Plaintiff has failed to produce evidence sufficient for a reasonable factfinder to conclude that the decisionmakers responsible for not-selecting Plaintiff for the PA Group Supervisor position had knowledge of Plaintiff's protected activity.

Plaintiff argues a September 29, 2017 email from Plaintiff to Brock Long, in which Plaintiff complains of discriminatory activity in FEMA, "traversed through FEMA's chain-of-command."[87] The email was between Plaintiff and Long, and Plaintiff provides no evidence that anyone else received, or knew of, this email.[88] Plaintiff does not claim that

---

[81] R. Doc. 94-38 (Exh. 31) at ¶ 9.
[82] R. Doc. 94-7 (Exh. 7) at ¶ 23.
[83] *Id*. at ¶ 21.
[84] *Id*.
[85] R. Doc. 94-33 (Exh. 26) at ¶ 8.
[86] R. Doc. 87-2 ¶ 13; R. Doc. 109 ¶ 13.
[87] R. Doc. 94 at p. 11.
[88] R. Doc. 94-22 (Exh. 15).

Long was involved in the selection process and points to no evidence showing that Long communicated the existence of Plaintiff's EEO complaints to anyone involved in Plaintiff's hiring decisions.

Plaintiff also claims that Kim Jordan "hear[d] stories" of discriminatory behavior occurring in the New Orleans office.[89] In support of this claim, Plaintiff cites only to the screenshot of Edward Wright's email profile and Plaintiff's own affidavit in which Plaintiff claims Jordan told him "she had heard of some discriminatory things out of the Louisiana office."[90] However, this evidence would not allow a reasonable factfinder to conclude Jordan was involved in the hiring process or that she communicated her knowledge of Plaintiff's EEO activity to individuals responsible for Plaintiff's non-selection. In fact, Plaintiff does not offer evidence showing Jordan had any knowledge of *his* EEO activity; he only claims that she acknowledged general discriminatory behavior in FEMA's New Orleans office.[91]

Plaintiff argues that Kara Brunson and Edward Wright "addressed Plaintiff's discrimination concerns with Plaintiff" and that "both parties work in Washington D[.]C."[92] However, the exhibit Plaintiff cites to support this claim is merely a screenshot of Edward Wright's Microsoft Outlook profile and contains no information concerning Plaintiff.[93]

Finally, Plaintiff argues that his "EEO activities are well known throughout the agency."[94] To support this claim, Plaintiff cites to the screenshot of Edward Wright's email profile,[95] his email to Long,[96] and a screenshot of his Microsoft Teams chat with Jordan

---

[89] R. Doc. 94 at p. 12.
[90] R. Doc. 94-28 (Exh. 21); R. Doc. 94-38 (Exh. 31) at ¶ 7.
[91] *Id.*
[92] R. Doc. 94 at p. 11.
[93] R. Doc. 94-28 (Exh. 21).
[94] R. Doc. 94 at p. 12.
[95] R. Doc. 94-28 (Exh. 21).
[96] R. Doc. 94-22 (Exh. 15).

which contains no discussion of his EEO activities.[97] Furthermore, Plaintiff claims his EEO activities were public knowledge, as one of his EEO complaints he appealed to this Court would appear when searching his name on the internet.[98]

The Court finds Plaintiff does not offer evidence sufficient to permit a reasonable fact finder to conclude that any of the individuals involved in Plaintiff's hiring process had knowledge of Plaintiff's EEO activity when making their hiring decisions. While Plaintiff claims that various other FEMA employees involved in the hiring process had knowledge of his EEO activity, Plaintiff does not cite evidence showing that (1) people involved in Plaintiff's non-selection had knowledge of his EEO activity or (2) people with knowledge of his EEO activity communicated their knowledge to people involved in Plaintiff's hiring process.

Even if Plaintiff had demonstrated one of the involved individuals had actual knowledge of the protected activity, Plaintiff would still have to offer evidence showing a causal connection between their knowledge of the protected activity and the adverse employment action.[99] If Plaintiff had established actual knowledge, one way for Plaintiff to satisfy this burden would be by showing a "very close" temporal proximity between the protected activity and the adverse employment action.[100]

Plaintiff argues there was a very close temporal proximity between his protected activity and the adverse employment actions in this case. Plaintiff argues he appealed one of his EEO complaints to this Court in 2019 and litigated this claim through 2022.[101] Plaintiff argues that throughout the entirety of this litigation, he was engaging in

---

[97] R. Doc. 94-34 (Exh. 27).
[98] R. Doc. 109 ¶ 39.
[99] *See Lyons v. Katy Independent School District.,* 964 F.3d 298, 305 (5th Cir. 2020) ("a plaintiff must demonstrate that the employer's decision 'was based in part on knowledge of the employee's protected activity'").
[100] *Id.* at 306-7.
[101] R. Doc. 94 at p. 13.

protected activity, and as a result, his protected activity was sufficiently close in time to his non-selections in 2019 and 2021 to establish causation.[102]

For causation purposes, the Fifth Circuit considers the date an EEO complaint is filed as the date the protected activity occurred.[103] In fact, Judge Vance examined this very issue in Plaintiff's prior litigation. In that case, Plaintiff argued that he participated in protected activity by actively litigating a case concerning his EEO activity.[104] However, Judge Vance held, and the Fifth Circuit affirmed, that for purposes of analyzing temporal proximity, a protected activity occurs when an EEO charge is filed or when the employer learns about the protected activity, not when a Plaintiff merely participates in litigation that results from a protected action.[105]

In this case, Plaintiff filed his last EEO complaint on November 29, 2017.[106] The earliest date that Plaintiff received notice of non-selection for any of the positions at issue in this matter is August 19, 2019.[107] As a result, the period between Plaintiff's last instance of protected activity and the earliest adverse employment action is nearly two years. In *Clark County School District v. Breeden*, the Supreme Court favorably cited a case holding that a three-month period without additional evidence of retaliation was insufficient to establish a causal connection.[108]  Two years is too long, on its own, to show a causal connection. As a result, Plaintiff cannot demonstrate causation through temporal proximity for any of the positions at issue.

---

[102] *Id.*
[103] *Devere v. Forfeiture Support Assocs., L.L.C.*, 613 F. App'x 297, 301 (5th Cir. 2015) (per curiam) (noting that when plaintiff filed her EEOC complaint in December 2009, and reached a settlement with ICE in December 2010, plaintiff had failed to establish temporal proximity between her "filing of the EEOC complaint in December 2009 and her termination in May 2011").
[104] *Paulin v. United States Department of Homeland Security*, 2022 WL 952262 at *8 (E.D. La. Mar. 30, 2022).
[105] *Id.*
[106] R. Doc. 67-2 at p. 3.
[107] R. Doc. 87-2 ¶ 49.
[108] 532 U.S. 268, 273 (2001).

Plaintiff has failed to offer evidence sufficient to permit a reasonable factfinder to infer that any individual involved in Plaintiff's hiring process for the Texas, Atlanta, New York, and PA Group Supervisor positions had knowledge of his EEO activity. In addition, even if knowledge had been established, Plaintiff has not demonstrated causation through temporal proximity for any of the positions at issue. As a result, he has failed to establish a causal connection between his protected activity and the adverse employment actions. Accordingly, he has failed to establish a prima facie case of retaliation under Title VII for non-selection for the Texas, Atlanta, New York, and PA Group Supervisor positions.

> **2.    If a Prima Facie Case is Established, the Burden Shifts to Defendant to Demonstrate a Non-Retaliatory Reason for Not Selecting Plaintiff.**

The Court has found Plaintiff failed to establish a prima facie case of retaliation under Title VII for the Texas, New York, Atlanta, and PA Group Supervisor positions. If Plaintiff had established a prima facie case of retaliation, the burden would have shifted to Defendant to offer a non-discriminatory reason for terminating Plaintiff.[109] "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."[110] For the sake of completeness, the Court will analyze whether Defendant has offered a non-retaliatory reason for not selecting Plaintiff for these positions.

For each of the positions, Defendant offers a non-retaliatory reason for not selecting Plaintiff. For the Texas positions, Defendant points to affidavits from Brasher and the three members of the Texas interview panel, in which each person states that Plaintiff lacked the necessary knowledge or experience for the positions.[111] For the Atlanta positions, Defendant points to Thomas's affidavit in which he states had no knowledge of

---

[109] *McCoy v. Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).
[110] *Id.*
[111] R. Doc. 87-1 at pp. 18-20.
[111] R. Doc. 87-11 at ¶ ¶ 3 and 4 (Affidavit of Angela Costella); R. Doc. 87-12 at ¶ ¶ 3 and 4 (Affidavit of Kristin Buda); R. Doc. 87-13 at ¶ ¶ 3 and 4 (Affidavit of William Melara).

Plaintiff's EEO activity but instead based his selection on the candidates' backgrounds and experiences.[112] For the New York and PA Group Supervisor positions, Defendant points to Hyacinthe's affidavit in which Hyacinthe states Plaintiff lacked the most important criteria for the positions, work experience with R2 applicants.[113]

Defendant has met its burden of production. The burden would shift to Plaintiff to demonstrate that the articulated reason is pretextual by showing that Defendant would not have retaliated against him "but for" his protected activity.[114]

### 3. If the Defendant Provides a Non-Retaliatory Reason for Not Selecting Plaintiff, the Plaintiff Must Provide Evidence Showing the Reason is Pretext.

As Defendant offered non-retaliatory reasons for its adverse employment actions, the burden shifts back to Plaintiff who must produce evidence showing Defendant's proffered reasons amount to pretext.[115] For a Title VII retaliation claim, at summary judgment a plaintiff demonstrates pretext by "show[ing] a conflict in substantial evidence" on the question of whether Defendant would have selected Plaintiff "but for" Plaintiff's protected activity.[116] In non-selection cases, a plaintiff may demonstrate pretext by offering evidence "from which a jury could conclude that 'no reasonable person, in the exercise of impartial judgment could have chosen the candidate selected over the plaintiff for the job in question.'"[117] Such evidence must be more than "merely subjective and speculative."[118] The Fifth Circuit has held that "greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another."[119]

---

[112] R. Doc 87-10 at US6-7.
[113] R. Doc. 87-8 at ¶ 19.
[114] *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).
[115] *Lemaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007).
[116] *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).
[117] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010) (quoting *Deines v. Texas Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280- 81 (5th Cir. 1999)).
[118] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996).
[119] *Id.*

Plaintiff fails to demonstrate that Defendant's stated non-discriminatory reasons for not promoting him amount to pretext. Plaintiff offers the type of subjective and speculative opinions the Fifth Circuit has held are insufficient to demonstrate pretext.[120] For example, Plaintiff argues his public assistant project experience, construction experience, and engineering background qualified him for the positions.[121] Plaintiff cites to his resume and his own affidavit as evidence that he was more qualified for the positions than those who Defendant selected.[122] In addition, Plaintiff argues he had greater public assistance experience than several candidates.[123] While these arguments show that Plaintiff believes he was the most qualified candidate for these positions, Plaintiff fails to demonstrate that "no reasonable person" could have chosen the other candidates over Plaintiff. Defendant cites to affidavits from the hiring/selecting officials as well as the Texas interview panel members who detail the weaknesses they perceived in Plaintiff's resume, while also describing the specific qualifications they found relevant in the candidates they hired.[124] These statements do not demonstrate a bias against Plaintiff, but rather a preference for the other candidates' qualifications and experience. The fact that Plaintiff disagrees with this preference does not demonstrate that Defendant's stated reasons for hiring other candidates amount to pretext.[125] In addition, while Plaintiff claims to have greater public assistance and construction experience than some of the other candidates, a candidate's greater experience alone does not demonstrate pretext.[126] Because Plaintiff's argument that his resume was superior to other candidates does not show that "but for" Plaintiff's protected activity, Defendant

---

[120] *See id.*
[121] R. Doc. 94 at p. 17.
[122] R. Docs. 94-38 (Exh. 31) (Plaintiff's Declaration); 94-2 (Exh. 2)(Plaintiff's Job Application and Resume).
[123] R. Doc. 94 at pp. 11-16.
[124] *See* R. Doc. 87-1 at pp. 17-25.
[125] *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010)
[126] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996).

would have promoted Plaintiff, Plaintiff has failed to demonstrate that Defendant's non-discriminatory reason is pretextual. As a result, his retaliation claim regarding the Texas, Atlanta, New York, and PA Group Supervisor positions fails as a matter of law.[127]

**B. Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claim Under Title VII for Non-Selection for the Chicago Positions.**

**1. Defendant Demonstrates a Non-Retaliatory Reason for Not Selecting Plaintiff.**

Plaintiff argues Defendant retaliated against him by not selecting him for two positions in the Chicago office:

- Supervisory Emergency Management Specialist (Recovery);[128]

- Emergency Management Specialist (Recovery).[129]

For purposes of this analysis, Defendant does not contest whether Plaintiff established a prima facie case of retaliation. Rather, Defendant advances to the second step in the *McDonnell Douglas* analysis and provides its non-retaliatory reason for not selecting Plaintiff for these positions.[130] Defendant represents that the Chicago region did not hire anyone for either of these positions, so they could not have retaliated against Plaintiff by not hiring him.[131] Defendant has articulated a non-retaliatory reason for not selecting Plaintiff, as it did not select anyone for the Chicago openings. The burden now shifts to Plaintiff to demonstrate that the articulated reason is pretextual by showing that Defendant would not have retaliated against him "but for" his protected activity.[132]

---

[127] Although Defendant argues Plaintiff did not exhaust his administrative remedies regarding the PA Group Supervisor position, the Court need not address this issue as it has already found that Plaintiff's retaliation claim for non-selection for these positions fails as a matter of law.
[128] R. Doc. 87-2 ¶ 11; R. Doc. 109 ¶ 11.
[129] R. Doc. 87-2 ¶ 12; R. Doc. 109 ¶ 12.
[130] R. Doc. 87-1 at pp. 17, 22-23.
[131] *Id.*
[132] *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).

### 2.    Plaintiff Fails to Demonstrate Pretext.

Plaintiff does not attempt to offer evidence rebutting Defendant's stated reason for not selecting him for the Chicago positions. Accordingly, Defendant has failed to demonstrate that Defendant's stated reason amounts to pretext, and his claim of retaliatory non-selection for the Chicago positions fails as a matter of law.

### C.    Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claim Under Title VII for Non-Selection for the EMS (Recovery)Position.

### 1.    Plaintiff has Failed to Make a Prima Facie Showing of Title VII Retaliation for Non-Selection for the EMS (Recovery)Position.

Plaintiff argues Defendant retaliated against him by not selecting him for the position entitled VA-FEMA-19-CLM-2939333-CORE, EMS (RECOVERY).[133] Defendant argues Plaintiff cannot make a prima facie case of retaliation for this position because Plaintiff cannot establish the third element of a prima facie case, a causal connection between his protected activity and the adverse employment action. Defendant argues Plaintiff cannot show that any of the individuals involved in the hiring process for this position had actual knowledge of Plaintiff's EEO activity.[134]

Neither Defendant nor Plaintiff has identified who the selecting/hiring officials were for this position. Instead, Plaintiff argues, but offers insufficient evidence, that employees throughout FEMA had general knowledge of his EEO activity. As discussed above, Plaintiff has failed to show that any of the individuals he claims had knowledge of his EEO activity participated in the hiring process for this job.  As a result, Plaintiff has failed to offer evidence sufficient to permit the finder of fact to conclude that any individual involved in Plaintiff's hiring process had knowledge of his EEO activity.

---

[133] R. Doc. 87-2 ¶ 49.
[134] R. Doc. 87-1 at pp. 15, 27.

Furthermore, even if Plaintiff had offered evidence sufficient to permit the finder of fact to conclude that those involved in the hiring process had knowledge of Plaintiff's EEO activity, Plaintiff still would have still failed to establish causation through temporal proximity because the period between his most recent protected activity and the adverse employment action is two years.[135] As a result, Plaintiff has failed to establish knowledge or temporal proximity between the protected activity and the adverse employment action. Accordingly, Plaintiff has failed to establish a causal connection between his protected activity and the adverse employment action and has failed to establish a prima facie case of retaliation under Title VII based on his failure to be selected for the EMS Recovery position.[136]

### 2.    Plaintiff Failed to Timely File his EEO Complaint Regarding the EMS Recovery Position.

Even if Plaintiff had established a prima facie case of retaliation for the EMS Recovery position, Plaintiff's claim still would fail because it is time-barred. Federal employees must seek informal counseling before they file an EEOC complaint.[137] The employee must initiate contact with an EEOC counselor within 45 days of the date of the matter alleged to be discriminatory.[138] Following this initial contact, "[i]f the matter has not been resolved, the aggrieved person shall be informed in writing by the Counselor, not later than the thirtieth day after contacting the Counselor, of the right to file a discrimination complaint."[139] This 30-day deadline may be extended by an agreement between the employee and the agency, but may not be extended by more than 60 days.[140] Accordingly, the counseling period can last, at most, 90 days from the initial contact

---

[135] *See supra* section I. A. a.
[136] Defendant does not offer a non-retaliatory reason for not selecting Plaintiff for this position. As such, the Court cannot conduct the *McDonnell Douglas* burden shifting analysis for this position.
[137] 29 C.F.R. § 1614.105(a).
[138] 29 C.F.R. § 1614.105(a)(1).
[139] 29 C.F.R. § 1614.105(d).
[140] 29 C.F.R. § 1614.105(e).

before the counselor must inform the complainant of his or her right to file a formal complaint. Importantly, "a complaint must be filed within 15 days of receipt" of this notice of the right to file a complaint.[141]

Defendant argues Plaintiff did not timely initiate contact with an EEOC counselor regarding the EMS Recovery position. Plaintiff testified in his deposition that he received notice he was not selected for this position on August 19, 2019.[142] From that point, Plaintiff had 45 days to initiate contact with an EEO counselor. Plaintiff alleges in his complaint that he initiated contact with a counselor on July 9, 2021, well outside the 45-day limit.[143] However, Plaintiff contradicts the allegations in his complaint in his affidavit, in which he states he contacted a counselor regarding non-selection for this position on or about August 28, 2019, which would fall within the 45-day limit.[144]

If Plaintiff's complaint is correct, and he initiated contact with an EEO counselor on July 9, 2021, he initiated contact nearly two years after he received notice of the alleged retaliatory non-selection that led to his complaint. This delay in initiating contact with a counselor violates § 1614.105(a)(1), and Plaintiff's claim is barred.

If Plaintiff's affidavit is correct, and he initiated contact with an EEO counselor on August 28, 2019, he complied with the 45-day time limit. However, the EEO counseling period can last, at most, 90 days from the time the employee initiated contact with the EEO counselor. At the end of the counseling period, the EEO counselor must provide notice to the employee of their right to file a formal complaint. The employee must then file a formal complaint within 15 days of this notice. Accordingly, the EEOC office must have provided Plaintiff with notice of his right to file suit within at most, 90 days from

---

[141] 29 C.F.R. § 1614.106(b).
[142] R. Doc. 87-5 (Plaintiff's Deposition), 84:19-85:7 and 172:2-8.
[143] R. Doc. 1 ¶ 10.
[144] R. Doc. 90-41 (Exh. 32) ¶ 9.

when he contacted the office on August 28, 2019. From that point, Plaintiff would have had 15 days to file a formal EEO complaint. As a result, the latest Plaintiff could have filed an EEO complaint without his claim being time-barred would have been 105 days from August 28, 2019. However, if Plaintiff's affidavit is correct, Plaintiff did not file an EEO complaint until September 19, 2021,[145] over two years later, and his claim is barred under 29 C.F.R. § 1614.106(b).[146]

As a result, if Plaintiff's complaint is correct, he has run afoul of 29 C.F.R. § 1614.105(a). If Plaintiff's affidavit is correct, he has run afoul of 29 C.F.R. § 1614.106(b). Either way, his claim for retaliatory non-selection for VA-FEMA-19-CLM-2939333-CORE, EMS (RECOVERY) is time-barred.

## II. Defendant is Entitled to Summary Judgment on Plaintiff's Hostile Work Environment Claim.

Plaintiff argues that Defendant created a hostile work environment through "years of denial of promotions and constant retaliation."[147] Under Title VII, to prevail on a hostile work environment claim, Plaintiff must establish that: (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment complained of was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[148] The Supreme Court has reasoned that "[h]ostile environment claims are different in kind from discrete acts."[149] "The 'unlawful employment practice' therefore cannot be said to occur on any

---

[145] *Id.*

[146] An issue may exist as to whether Defendant waived this defense by not asserting it in its answer. *See Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 552 (2019). However, the parties did not raise it.

[147] R. Doc. 1. at ¶ 25.

[148] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

[149] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."[150]

In terms of the fourth element of a hostile work environment claim—that the harassment affected a term, condition, or privilege of her employment—it is said that harassment affects a term, condition, or privilege of employment when it is "*severe or pervasive.*"[151] To be considered hostile, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[152] To determine whether an environment is sufficiently hostile or abusive, the fact-finder must look at the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[153] When genuine disputes of material fact exist as to the totality of the circumstances, the issue is "best left for the triers of fact to determine after all testimony has been heard and all evidence presented."[154] The Supreme Court instructs that a "reasonable person" standard should be employed to determine whether conduct is severe or pervasive, considering "all the circumstances."[155]

Plaintiff has failed to offer evidence creating a disputed issue of fact as to whether Defendant's conduct in denying him promotion amounted to severe or pervasive conduct. In this case, Plaintiff alleges that Defendant created a hostile-work environment by failing to promote him in retaliation for his EEO complaints.[156] Plaintiff does not offer evidence

---

[150] *Id.*
[151] *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002) (emphasis added).
[152] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988).
[153] *Id.*
[154] *Wilson v. Laitram Corp.*, 131 F.Supp.2d 826, 835 (E.D. La. 2001).
[155] *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998).
[156] R. Doc. 1. at ¶ 25.

that Defendant subjected him to repeated humiliating, discriminatory conduct that impacted his day-to-day work life. The only discriminatory conduct that Plaintiff alleges occurred was his non-selection for positions for which he applied.[157] The Fifth Circuit has held that to be considered hostile, the work environment must be "both objectively and subjectively offensive."[158] Moreover, the environment must be one that a reasonable person would find hostile or abusive.[159] The fact that Defendant did not select Plaintiff for these positions would not create an objectively offensive environment for a reasonable person.[160] In addition, Plaintiff was privately notified that he was not selected for these positions; he was not publicly humiliated at his place of work.[161] These private e-mail communications that occurred over a brief three-month span did not create a work environment that a reasonable person would consider hostile or abusive. Considering the totality of the circumstances, Plaintiff has failed to show there is a genuine issue of material fact with respect to whether alleged harassment altered a condition of his employment. As a result, his hostile work environment claim under Title VII fails as a matter of law.

## **CONCLUSION**

**IT IS ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

**New Orleans, Louisiana, this 27th day of January, 2026.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[157] *Id.*
[158] *Ramsey*, 286 F.3d at 268.
[159] *Faragher*, 524 U.S. at 788.
[160] *See id.*
[161] R. Doc. 87-2 ¶ 11-13.